**BOARD OF SUPERVISORS OF HENRICO COUNTY, VIRGINIA, Appellee,**

v.

**G. William MILLER, Secretary of the Treasury; and Director, Office of Revenue Sharing, Appellants.**

**No. 79–1788.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1980.

Decided July 10, 1980.

**1138**

Katherine S. Gruenheck, App. Staff, Civil Division, Dept. of Justice, Washington, D.C. (Alice Daniel, Asst. Atty. Gen., E. Montgomery Tucker, Acting U. S. Atty., Eloise Davies, App. Staff, Civil Division, Dept. of Justice, Washington, D.C., on brief), for appellants.

Myron C. Smith, Fairfax, Va. (Robert C. Fitzgerald, Fitzgerald & Smith, P.C., Fairfax, Va., on brief), for appellee.

Before BUTZNER and HALL, Circuit Judges, and KIDD,* District Judge.

**K. K. HALL, Circuit Judge:**

This appeal presents the question whether the Secretary of the Treasury and his agent, the Director of Revenue Sharing, acted arbitrarily and capriciously in determining the entitlement of Henrico County, Virginia, under the State and Local Government Financial Assistance Act of 1972, 31 U.S.C. § 1221 *et seq.* In June 1976, Henrico County filed a Petition for Mandatory Injunction, alleging that the method used by the Secretary to determine the "adjusted taxes" element of the statutory Revenue Sharing formula during entitlement periods 6, 7 and 8[1] treated Henrico County less favorably than other "similarly situated" local and county governments in Virginia. The district court found the Secretary's method discriminatory and ordered the respondents to recompute Henrico County's entitlement. The Secretary appeals and we reverse because the Secretary's action was reasonable.

---

* Honorable William M. Kidd, United States District Judge for the Southern District of West Virginia, sitting by designation.

## I. The Statutory Framework

The State and Local Government Financial Assistance Act of 1972 [the Act] was designed to alleviate the growing financial burdens on State and local governments. It provides for the allocation of federal funds to each State, which retains a portion of these funds and distributes the remainder among its local governments. 31 U.S.C. §§ 1225, 1226(a). The amount to which a county or local government is entitled is computed on the basis of three statutory factors: population, a "general tax effort factor," and a "relative income factor." 31 U.S.C. § 1227.

This case focuses on the general tax effort factor. This factor recognizes that federal aid should be given to governmental units which make a relatively greater effort to finance their own needs. S. Rep. No. 1050, 92d Cong., 2d Sess. (1972) *reprinted in* U.S. Code Cong. & Admin. News, pp. 3874, 3885. The greater the general tax effort factor, the greater the entitlement.

The general tax effort factor is defined in the Act as "the adjusted taxes of that unit of local government, divided by the aggregate income [§ 1228(a)(3)] attributed to that unit of local government." 31 U.S.C. § 1228(e)(1). "Adjusted taxes" are:

(i) the compulsory contributions exacted by such government for public purposes

. . .

(ii) adjusted (under regulations prescribed by the Secretary) by excluding an amount equal to that portion of such compulsory contributions which is properly allocable to expenses for education.

31 U.S.C. § 1228(e)(2). Stated simply, the tax effort factor of the allocation formula disregards those taxes raised by the local government which are spent on education.

In the case of governmental units which levy a special school tax or maintain special school funds, the Secretary computes the adjusted taxes by simply excluding the amount of that tax or fund. 31 C.F.R.

---

1. The time period involved extends from July 1975 to September 1977.

§ 51.22(b)(1). Where a local government does not maintain a separate fund or tax, the Secretary must compute the amount which is "properly allocable to expenses for education" in order to make the adjustment. This is done using the following formula set forth in 31 C.F.R. § 51.-22(b)(2): [2]

$$\text{X (tax allocable to education)} = \frac{\text{local tax revenue}}{\text{general fund revenue}} \times \text{school expenditures}$$

The relationship of the elements of the formula is better visualized in the following equation:

$$\frac{\text{X (tax allocable to education)}}{\text{local taxes}} = \frac{\text{school expenditures}}{\text{general fund revenue}}$$

The Secretary's formula was reflected in the "RS–11/RS–12" and "RS–12A/RS–12B" methods which were used by the Secretary during the entitlement periods in question to determine the taxes allocable to education where funds were commingled. These methods involved the reporting, on forms supplied by the Secretary, of relevant financial data, and expressly excluded from consideration those amounts which were placed in separately designated funds rather than the government's general fund.[3]

## II. *The Controversy*

For the purposes of this case, local taxes and school expenditures are known, but the "total general fund revenue" component of the equation is in dispute. It is apparent from the equation that as the total general fund revenue increases, the amount of local taxes allocable to education decreases—and the "adjusted taxes" figure increases. Therefore, the amount of total general fund revenue, from the standpoint of the local government, should be as high as possible to obtain the highest general "tax effort factor" and, concomitantly, a bigger piece of the revenue sharing pie.

For entitlement periods 6, 7 and 8 Henrico County attempted to include in the "total general fund revenue" element of the Secretary's equation certain highway and welfare funds, derived from the State,[4] which were not actually maintained in the general fund, but were placed in separate, dedicated funds. The Secretary disallowed these amounts in computing Henrico County's share of Virginia's allotment under the Act on the ground that they were not actually part of the general fund. Henrico County claims, and the district court agreed, that the Secretary's disallowance of these funds

2. The regulation states:

(2) If tax revenues for purposes of education are not separately identifiable because education is financed by expenditure or transferring of moneys from a general fund (or similarly named fund) to a school fund or funds, then the ratio of tax revenues (as defined in paragraph (a) of this section) to the total revenues in such fund shall be calculated, and that ratio multiplied by the expenditure or transfer of moneys from such fund to the school fund shall be equated with the tax revenues properly allocable to expenses for education. The phrase "total revenues in such fund" means cash and securities on hand in the general fund (or similarly named fund) at the beginning of the fiscal year, plus all revenues to the fund (other than trust or agency revenues) less cash and securities on hand at the end of the fiscal year. Trust and agency funds are those held specifically for individuals or governments for which no discretion can be exercised as to the amounts to be paid to the recipient.

3. The Secretary's methodologies have undergone several changes over the years. In 1976, the Secretary deleted from both "expenditures for schools" and "revenues in the general fund" all dedicated educational funds. Later, the Secretary developed RS–12C, which deletes all educational funds from "revenues in the general fund."

4. The highway funds were derived from State gasoline taxes as reimbursement by the State for the construction and maintenance of secondary roads by the cities and the two urban counties, Henrico and Arlington. The welfare funds were reimbursed by the State for local government welfare expenditures.

was arbitrary and capricious because other local governments in Virginia which had received funds for the same purpose from the same sources but included them in their general funds were "given credit" for them.

■ In effect, Henrico County asks that we require the Secretary to compare the components of an individual government's total funding with those of other governments and to treat them identically regardless of differences in accounting or budgetary structure. But it is not the function of this court to choose for the Secretary a better or more equitable means of computing "adjusted taxes" for the purpose of determining the county's tax effort factor. Congress has explicitly assigned this task to the Secretary, 31 U.S.C. § 1228(e)(2). Our scope of review is limited to whether the Secretary's method was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2). If the Secretary's action was based on a consideration of the relevant legal factors and the Secretary can articulate a rational connection between the facts and the method chosen, we must uphold his action. *Bowman Transportation, Inc. v. Arkansas Best Freight Systems, Inc.*, 419 U.S. 281, 287, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974); *Consolidation Coal v. Costle*, 604 F.2d 239, 243 (4th Cir. 1979).

■ We think there was a rational basis for the Secretary's method and its application to Henrico County. The Secretary was required by the statute to devise a system for determining that portion of the total compulsory contributions exacted by a local government which was properly allocable to expenses for education. It was logical for the Secretary to assume that school taxes bear the same relationship to the total taxes as school expenditures bear to the body of funds from which they are derived. And it follows that if educational expenses are paid out of a general fund, funds which are maintained separately and which cannot be used for education are irrelevant.

Most local governments realized that under the existing methods it was profitable to include in the general fund monies from other sources which were designated for a particular use, such as the highway and welfare funds in this case, because inflation of the "total general fund revenue" figure in the Secretary's equation would result in a smaller downward adjustment for amounts allocable to education. Henrico County also knew that its designated funds would be counted in the equation if it maintained them in its general fund, but for reasons unexplained it chose not to do so.

■ Henrico County does not dispute the Secretary's assertion that such designated funds really have no place in the equation. It only asserts that having allowed other local governments to maximize their share of the Revenue Sharing money allotted to the State, the Secretary should increase Henrico County's share even though it chose not to structure its system to take advantage of the opportunity. We do not think the Secretary, administering a national program, has a duty to depart from his own methodology to give Henrico the favorable treatment it could have received had it chosen to do so.

Finally, we note that under the current "RS–12C method"[5] the Secretary would still disallow the highway and welfare funds which Henrico sought to include in the "total general fund revenue" element of the equation. Under the new method, however, local governments which placed such designated funds in their general revenue accounts would also find them excluded from consideration. Henrico admits that this remedies the alleged arbitrary treatment in this case, and this reaffirms our conclusion that the Secretary's initial attempt to exclude non-general funds was reasonable, if not totally effective. The fact that the Secretary may have found a better or more equitable means of achieving the same goal does not render the earlier attempt arbitrary, and we decline to find it so.

---

**5.** See n. 3, *supra.*

Accordingly, the judgment of the district court is reversed, and the case remanded with instructions that judgment be entered for the defendant.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*